**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**MEDFORD DIVISION**

**UNITED STATES OF AMERICA,**

        Plaintiff,

        v.

**STEVEN METHENY**,

        Defendant.

No. 1:13-cr-00053-AA-1
No. 1:18-cv-01481-AA

**OPINION & ORDER**

_____

AIKEN, District Judge.

The matter comes before the Court on Defendant Steven Metheny's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 117. For the reasons set forth below, Defendant's motion under § 2255 is DENIED. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required.

## BACKGROUND

In February 2014, Defendant Steven Metheny and his co-defendant Levi Phillips were indicted for their roles in a scheme to defraud the United States Forest Service. ECF No. 1. Metheny was charged with a single count of Conspiracy to Defraud the United States Forest Service (Count 1); four counts of Mail Fraud (Counts 2-5); two counts of Wire Fraud (Counts 6-7); six counts of Making a False Statement (Counts 8-13); nine counts of Endangering the Safety of an Aircraft (Counts 14-22); and a single count of Theft from Interstate Shipment (Count 23).

The charges stemmed from Metheny's conduct as Vice President of West Coast Operations for Carson Helicopter's Inc. ("Carson") and Vice President of Carson Helicopter Services, Inc.

("CHSI").    Presentence  Report  ("PSR")  ¶  12.    Metheny  and  Phillips,  who  was  Director  of

Maintenance for Carson and CHSI, submitted false weight statements in support of bids to provide

helicopter services to the Forest Service.  *Id.* at ¶ 13.  As a result of these falsified records, Carson

was awarded several Forest Service contracts it would not otherwise have been qualified to receive

and for which Carson was paid more than $18,000,000.  *Id.*

The false weight data was also transmitted to helicopter pilots and crews for use in the field

during Forest Service firefighting operations, endangering the safety of the helicopters in flight.

PSR ¶ 14.  In August 2008, one of the Carson helicopters crashed during firefighting in California,

killing nine people and seriously injuring four others.  *Id.* at ¶ 23.  A subsequent investigation

revealed  that  the  helicopter  was  substantially  over  the  bid  weight  submitted  by  Metheny.  *Id.*

Following the crash, Metheny and Phillips attempted to prevent the Forest Service from weighing

the remaining helicopters and took steps to continue concealing the true weight of the helicopters.

*Id.* at ¶ 15.

After he was indicted, Metheny retained attorney Steven Meyers to represent him.  ECF

No. 7.

On November 24, 2014, Metheny entered into a plea agreement with the Government by

which he agreed to plead guilty to a single count of Conspiracy to Commit Mail and Wire Fraud

in violation of 18 U.S.C. § 1349 and a single count of Making a False Statement in violation of 18

U.S.C. § 1001.  Plea Agreement, ECF No. 56.  The parties agreed that any upward adjustment to

Metheny's offense level "pursuant to U.S.S.G. § 2B1.1(b)(1) for the amount of loss under Counts

1 and 8 of the Indictment will be determined by the Court at the time of sentencing."  *Id.* at 3.

In addition, Metheny waived the right to appeal "from any aspect of the conviction and

sentence on any grounds except for a claim that: (1) the sentence imposed exceeds the statutory

maximum, or (2) the court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guideline Chapter 5K." Plea Agreement at 4.  Metheny also waived the right to file a collateral attack, including a motion under § 2255, on any ground other than ineffective assistance of counsel. *Id.*

Pursuant to that plea agreement and the accompanying plea petition, Magistrate Judge Clarke accepted Metheny's guilty plea on November 24, 2014.  ECF No. 54, 57.  A PSR was prepared and the matter was referred to this Court for sentencing.

The PSR found that Metheny's base offense level was 7.  PRS ¶ 52.  The PSR recommended a two-level increase for use of sophisticated means; a two-level increase because the offense involved a conscious or reckless disregard for the risk of death or serious bodily injury; a two-level increase for Metheny's abuse of a position of trust; and a two-level increase for Metheny's leadership role in the conspiracy. *Id.* at ¶¶ 54, 55, 57, 58.  The PSR also recommended a three-level reduction for acceptance of responsibility. *Id.* at ¶¶ 62-63.  Most significantly, the PSR recommended that Metheny be held accountable for an intended loss of $51,699,000, which resulted in a twenty-four-level increase in his offense level, yielding a total offense level of 36. *Id.* at ¶¶ 53, 64.  This yielded a guidelines range of 188 to 235 months. *Id.* at ¶ 99.

Metheny argued that he had not intended any loss to the Forest Service and that his total offense level should be 9 with a guidelines range of 4 to 10 months.  Def. Sentencing Mem. at 20-21.  ECF No. 80.

The Court held a two-day sentencing hearing on June 15 and 16, 2015.  ECF Nos. 81, 82.  At the conclusion of the hearing, the Court adopted the PSR, except that it found the intended loss to be $32,867,109.  ECF No. 85.  This resulted in a twenty-two-level increase in Metheny's offense

level, for a total offense level of 34 and a guideline range of 151 to 188 months. The Court imposed

a sentence of 151 months, at the low end of the guideline range.   ECF No. 84.

Metheny filed a direct appeal of his sentence, arguing that his appeal waiver was

unenforceable because the Government had breached the plea agreement by advocating for an

aggravating role adjustment under U.S.S.G. § 3B1.1(c). The Ninth Circuit reviewed the matter *de*

*novo* and dismissed the appeal on December 20, 2016, holding:

> The plea agreement was silent regarding role enhancement and contained an
> integration clause expressly disclaiming any promises not set forth in the
> agreement. Accordingly, we conclude that the government did not breach the plea
> agreement and that the appeal wavier bars Metheny's appeal.

*United States v. Metheny*, 671 F. App'x 647 (9th Cir. 2016).

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court

that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence, or that
> the sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude

had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht*

*v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052,

1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases

under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition

brought under that section, '[u]nless the motions and the files and records of the case *conclusively*

*show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255).  In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted).  A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).  Conclusory statements in a § 2255 motion are insufficient to require a hearing.  *Hearst*, 638 F.2d at 1194.  "The court may appraise a petition by what is reasonably credible."  *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

Metheny's motion alleges (1) that he received ineffective assistance of trial counsel; (2) that his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel on direct appeal; and (3) that this Court violated his due process rights during sentencing.

## I.    Waiver

Metheny alleges that this Court violated his due process rights by (1) miscalculating the amount of loss when determining his offense level and (2) by allowing the victims of the helicopter crash to speak during sentencing.

In his plea agreement, Metheny waived the right to raise a collateral challenge to his sentence, except on grounds of ineffective assistance of counsel.  Such express waivers are generally valid, provided they are knowing and voluntary.  *See, e.g., United States v. Snider*, 180

F. Supp.3d 780, 789-90 (D. Or. 2016).  In this case, the Ninth Circuit has already held that the appeal waiver contained in the plea agreement is enforceable.  *Metheny*, 671 F. App'x at 647.

The Court concludes that Metheny expressly, knowingly, and voluntarily waived his right to file a § 2255 motion on any ground except ineffective assistance of counsel.  Metheny's § 2255 motion is therefore DENIED insofar as it seeks challenge his conviction and sentence on any ground other than ineffective assistance of counsel.

## II.    Ineffective Assistance of Counsel

Metheny contends that his trial counsel was ineffective for (1) failing to object to the Government's recommendation of a two-level enhancement under U.S.S.G. § 3B1.1, which Metheny contends was a breach of the plea agreement; (2) misleading Metheny by "essentially" promising him that the amount of loss would be zero dollars; and (3) by failing to object to the Court's decision to allow victims of the helicopter crash to make statements during sentencing. Metheny contends that his appellate counsel was ineffective for failing to make arguments related to trial counsel's alleged failings on direct appeal.

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel.  *Premo v. Moore*, 562 U.S. 115, 121 (2011).  Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense.  *Id.*

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms.  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  The court must inquire "whether counsel's

assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

### A. U.S.S.G. § 3B1.1

Metheny contends that his trial counsel was ineffective for failing to argue at sentencing that the Government breached the terms of the plea agreement by advocating for an aggravating role adjustment under U.S.S.G. § 3B1.1. This precise issue was litigated on direct appeal.

*Metheny*, 671 F. App'x at 647 ("Metheny argues that the [appellate] waiver is unenforceable because the government breached the plea agreement by advocating for an aggravating role adjustment under U.S.S.G. § 3B1.1(c)."). The Ninth Circuit reviewed the matter *de novo* and found that the Government did not breach the plea agreement. *Id.* "The plea agreement was silent regarding role enhancement and contained an integration clause expressly disclaiming any promises not set forth in the agreement." *Id.*

"Generally, a defendant may not relitigate in a § 2255 proceeding issues that have been resolved on appeal." *United States v. Vasquez*, No. 3:11-CR-00026-BR, 2015 WL 4506922, at *10 (D. Or. July 24, 2015) (citing *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985). Metheny does not identify any exceptions to this general rule, such as an intervening change in law. *See, e.g. United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

The application of the general rule is especially appropriate in this case. In order sustain Metheny's § 2255 motion, the Court would have to find that the Government had breached the plea agreement by advocating for an aggravating role enhancement, contrary to the Ninth Circuit's explicit holding in *Metheny*. The Court declines to do so and concludes that, as the Ninth Circuit has already held that there was no breach of the plea agreement, Metheny's trial counsel was not ineffective for failing to object to the alleged breach.

### B.  Amount of Loss

Metheny contends that his trial counsel promised him that the amount of loss would be zero dollars, which would have resulted in a substantially lower offense level and guideline range. Metheny Decl. ECF No. 134-1. Metheny claims that his attorney repeatedly assured him that there was no loss amount and promised that his sentence would not include any loss greater than zero dollars. *Id.* Metheny affirms that he relied on this advice in accepting the plea agreement and

waiving his right to proceed to trial and that, had he been aware of the risk that the court would impose sentence based on a substantial monetary loss, he would not have pleaded guilty to the offense. *Id.* Metheny argues that this amounted to ineffective assistance of counsel.

In response, the Government has submitted a declaration from Steven Meyers, Metheny's attorney at sentencing. Meyers Decl. ECF No. 140-1. In that declaration, Meyers affirms that he believed and continues to believe that the amount of loss should be zero, but that he was aware of the Government's contrary position. *Id.* Meyers explained this issue to Metheny on multiple occasions and Metheny ultimately rejected the initial plea agreement because it contained a loss stipulation. *Id.* As negotiations continued, the parties were unable to resolve the dispute over the loss amount. *Id.* Meyers denies that he ever mischaracterized the potential loss amount that could be attributed to Metheny. *Id.*

Eventually the parties entered into a plea agreement that left the amount of loss up to the Court. Meyers Decl. This preserved Metheny's ability to argue that the amount of loss was zero, but similarly left the Government free to make its own argument concerning the amount of loss. *Id.* Meyers explained to Metheny "the sentencing risks and uncertainties attendant to the court making those determinations." *Id.* Meyers affirms that Metheny never requested that Meyers assist him in withdrawing the guilty plea. *Id* . Meyers affirms:

> I never promised Mr. Metheny or gave him personal assurances that the Court would find the loss amount would be zero in calculating the guideline range in his case. I told Mr. Metheny what I believed would be the advisory guideline range based on my calculations from his representations and the evidence; however, I clearly informed him that the Court would make the ultimate decision on the amount of loss and the final guideline range could be different. Likewise, Mr. Metheny knew the Government was seeking a substantially higher sentence based on a guideline range dependent upon the amount of loss it was pursuing.

Meyers Decl.

The Meyers Declaration is consistent with the record in this case.  The plea agreement provides that "The parties agree that any upward adjustment to the offense level pursuant to U.S.S.G. § 2B1.1(b)(1) for the amount of loss under Counts 1 and 8 of the Indictment will be determined by the Court at the time of sentencing."  Plea Agreement at 3.

In the accompanying plea petition, Metheny acknowledged that he knew the maximum sentence for Count 1 was 20 years' imprisonment.  Plea Pet. at 4.  ECF No. 57.  Metheny also acknowledged that "If my attorney or any other person has calculated a guideline range for me, I know that this is only a prediction and advisory and that it is the judge who makes the final decision as to what the guideline range is and what sentence will be imposed."  *Id.*  Metheny also represented that "No officer or agent of any branch of government (federal, state or local) *or anyone else* has promised or suggested that I will receive a lesser term of imprisonment, or probation or any other form of leniency if I plead 'GUILTY' except as stated in the Plea Agreement."  *Id.* at 6 (emphasis added).

On November 24, 2014, Metheny appeared before Judge Clarke to enter a guilty plea pursuant to the plea agreement.  Plea Hearing Tr. ECF No. 103.  Metheny was placed under oath and questioned by Judge Clarke concerning his plea.  The Government was asked to place the terms of the plea agreement on the record, including the provision concerning the amount of loss, which was related as: "The parties agree that any upward adjustment to the offense level pursuant to the guidelines for the amount of loss under counts one and eight of the Indictment will be determined by the court at the time of sentencing."  *Id.* at 15-16.  Judge Clarke asked Metheny if he understood the plea agreement and Metheny responded that he did.  *Id.* at 19.  Metheny also affirmed, under oath, that he had not been given any other promises of leniency, other than what

was contained in the plea agreement. *Id.* Judge Clarke accepted Metheny's guilty plea, finding that it was knowing and voluntary. *Id.* at 25.

The Court also notes that Metheny's co-defendant entered into a plea agreement that stipulated to an amount of loss greater than $1,000,000 and up to $22,815,071, with the total to be determined by the Court at the time of sentencing. ECF No. 29.

In light of the plea agreement, plea petition, and Metheny's own statements at the change of plea hearing, the Court concludes that Metheny was aware that the amount of loss was in dispute and would be resolved by the Court at sentencing. Contrary to his Declaration, Metheny expressly denied in his plea petition and at the change of plea hearing that anyone had made any promises to him concerning his sentence, other than what was set forth in the plea agreement.

At the two-day sentencing hearing, the issue of amount of loss was vigorously argued by the Government and Meyers. At the close of the first day, the Court asked Metheny if he'd heard everything said in court that day and he affirmed that he had. Sentencing Tr. 215. ECF No. 95. Metheny also confirmed that he'd read the PSR and the accompanying documents. *Id.* The Court then asked Metheny if there was anything he wished to tell the Court before sentence was imposed. *Id.* In response, Metheny gave a lengthy statement in which he took "full responsibility for the actions I did take in preparation of the U.S. Forest Service contract in the spring of '08." *Id.* at 216. Metheny did not indicate that he had been promised a loss amount of zero.

Viewed against the record, Metheny's claims concerning Meyers's alleged promises are palpably incredible and no evidentiary hearing is required. The Court cannot find that Meyers rendered ineffective assistance as Metheny's trial counsel, either in terms of informing Metheny of the risk concerning the disputed amount of loss, or in negotiating the plea agreement.

### C.  Statements at Sentencing

Finally, Metheny contends that his trial counsel erred by failing to object to the victims of the helicopter crash being allowed to address the Court during the sentencing hearing.  The record reflects, however, that Meyers did object to the crash victims being allowed to speak and the Court overruled the objection.  Sentencing Tr. 6-7.  The Court cannot conclude that Meyers was ineffective on that basis.  Although Metheny makes additional arguments concerning the Court's decision, those arguments were expressly waived by the plea agreement, as previously discussed.

### D.  Appellate Counsel

Metheny argues that his appellate counsel was ineffective for failing to raise issues concerning the effectiveness of trial counsel on direct appeal.  "If trial counsel's performance was not objectively unreasonable or did not prejudice [the defendant], then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and [the defendant] was not prejudiced by appellate counsel's omission."  *Moormann v. Ryan*, 628 F.3d 1102, 1107 (9th Cir. 2010).

As discussed in the preceding sections, the Court concludes that trial counsel was not ineffective and the Court cannot, therefore, conclude that Metheny's appellate counsel was ineffective.

### E.  Certificate of Appealability

A final order in a § 2255 proceeding may not be appealed unless a judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B).  A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a

demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks and citation omitted).

In this case, the Court concludes that Metheny has failed to make the required showing and so declines to issue a certificate of appealability.

## CONCLUSION

For the reasons set forth above, Defendant's Motion under 28 U.S.C. § 2255, ECF No. 117, is DENIED. No evidentiary hearing is necessary because the allegations in Defendant's motion, when viewed against the record, do not give rise to a claim for relief. The Court declines to issue a certificate of appealability on the basis that Defendant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

It is so ORDERED and DATED this <u>27th</u> day of May 2020.


 /s/Ann Aiken
ANN AIKEN
United States District Judge