IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:13-cr-00053-AA-1 |
| Plaintiff, | **OPINION AND ORDER** |
| vs. | |
| STEVEN METHENY, | |
| Defendant. | |

AIKEN, District Judge:

Before the Court is defendant Steven Metheny's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 147. For the following reasons, the motion is DENIED.[1]

## STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817,

---

[1] As discussed below, defendant filed a Supplement (doc. 156) to this Motion yesterday, March 17, 2021, which the Court will treat as a renewed motion and address in a separate opinion.

Page 1 – OPINION AND ORDER

824–25 (2010). Compassionate release under section 3582(c)(1)(A) provides an exception in rare cases. With the passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), Congress authorized courts to modify a defendant's sentence on a motion for compassionate release by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that two conditions are met: (1) that "[e]xtraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In making that determination, courts must "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable . . . ." 18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement is found in the United States Sentencing Guidelines, § 1B1.13. The policy statement identifies four categories of extraordinary and compelling reasons: (A) the medical condition of the defendant, including "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (B) the age of the defendant; (C) family circumstances; and (D) extraordinary and compelling reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G.

§ 1B1.13 cmt. 1(A)–(D).[2] The policy statement also requires the court to find that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).

## DISCUSSION

In the spring of 2008, defendant was Vice President of West Coast Operations for Carson Helicopters, Inc. ("Carson"). On Carson's behalf, defendant submitted bids for helicopter contracts to the U.S. Forest Service, and forged the helicopter weight and balance documents submitted with the bids. He and a co-defendant then attempted to conceal the fraud by placing the same false weight and performance information into the helicopter flight logs. That summer, one of Carson's helicopters crashed in Northern California while carrying 13 Forest Service firefighters and crew. Nine were killed and four were severely injured. An investigation revealed that the helicopter crashed, in part, because it was carrying too much weight and that the pilots had used the forged flight log to calculate the helicopter's payload capability for the fatal flight.

In February 2013, defendant was charged in a 23-count indictment, 22 of which related to the false bid proposals and cover up attempts. Doc. 1. On November 24, 2014, defendant pleaded guilty to two of those counts: conspiracy to commit mail and wire fraud (count 1) and making a false statement (count 8). Doc. 54. On June 16,

---

[2] Although the policy statement limits the fourth category to other reasons "[a]s determined by the Director of the Bureau of Prisons," the Court follows the majority of federal courts that "have found that the most natural reading of the amended § 3582(c) and 28 U.S.C. § 994(t) is that the district assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020); *see also United States v. Joling*, 466 F. Supp. 3d 1141, 1145 (D. Or. 2020).

Page 3 – OPINION AND ORDER

2015, he was sentenced to 151 months' imprisonment, which was at the low end of the 151-188 months' guidelines range calculated by the Court. Docs. 81, 82, 84, 85. Defendant is currently incarcerated at Federal Correctional Institution ("FCI") Lompoc and has a projected release date of May 6, 2026.

Defendant filed this Motion on October 7, 2020, seeking a reduction of his sentence to time served. Doc. 147. If released, he plans to live with his wife and children in Medford, Oregon. The United States Probation Office investigated the residence and reported that "[t]here are no issues or concerns with the living arrangements." Doc. 147 Ex. E at 2. The Court held a hearing on this matter on November 13, 2020. Doc. 152. Because more than 30 days have elapsed since defendant submitted a request for compassionate release to the warden of FCI Lompoc on April 8, 2020, this motion is properly before the Court.[3]

Defendant contends that his age, obesity, and medical conditions place him at an increased risk of severe illness or death from a COVID-19 infection. He further contends that that risk, combined with circumstances at FCI Lompoc, present extraordinary and compelling reasons for compassionate release. Defendant is 50 years old, with a BMI around 30.2 kg/m$^2$ and hypertension. In March 2019, he

---

[3] Defendant filed this Motion while his appeal from this Court's earlier denial of his Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255 was pending. *See* Docs. 141, 142, 147. He argued that this Court had jurisdiction to grant compassionate release despite that appeal or, in the alternative, asked the Court to make a ruling under Federal Rule of Civil Procedure 37(a)(3) indicating that the Court would grant compassionate release if the Ninth Circuit remanded for that purpose. Doc. 147 at 8–9. The Government responded that the appeal divested this Court of authority to grant, but not to deny, the Motion. Doc. 149 at 4–6. The Ninth Circuit denied defendant's request for a certificate of appealability on February 9, 2021. Doc. 153. Defendant asserts that he "does not intend to pursue [the] matter further." Doc. 156 at 2. Accordingly, this Court's jurisdiction over this Motion is now undisputed.

experienced severe chest pain, which resulted in a three-day hospitalization. In May 2020, defendant tested positive for COVID-19 and experienced mild symptoms.

The Centers for Disease Control and Prevention ("CDC") recognizes that "[a]dults of any age" with obesity "are at increased risk of severe illness from" COVID-19. CDC, *People with Certain Medical Conditions*, COVID-19 (Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 15, 2021). Adults with hypertension "*might* be at an increased risk for severe illness" from COVID-19. *Id.* (emphasis added). And "[t]he risk for severe illness with COVID-19 increases with age," with "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older." *COVID-19: Older Adults*, CDC (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

Defendant contends that his prior COVID-19 infection does not mitigate his risk from another COVID-19 infection. Although reinfection with COVID-19 is believed to be rare, there have been reports of reinfections and "[t]he robustness and duration of immunity to [COVID-19] remains under investigation . . . ." *Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19*, CDC (Feb. 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html. Defendant also offers expert testimony from Melissa Chubbuck, MD, MS, who opined that because defendant had only mild symptoms from his first infection, "he is likely at greater risk for reinfection than a person with a history of a more severe case." Chubbuck Report at 1, Def.'s Ex. B (doc. 147-1). Dr. Chubbuck

explained, "[m]ilder cases may be the least likely to have a strong, protective antibody response." *Id.* at 2 (citing William A. Haseltine, *What COVID-19 Reinfection Means for Vaccines*, SCIENTIFIC AMERICAN (Sept. 23, 2020), www.scientificamerican.com/article/what-covid-19-reinfection-means-for-vaccines)).

FCI Lompoc, where defendant is incarcerated, is one of the Bureau of Prisons ("BOP") facilities hardest hit by the pandemic. Lompoc learned of its first positive COVID-19 test result for a staff member on March 27, 2020, and of its first positive test for an inmate on March 30, 2020. Off. of the Inspector Gen. Report at iii, Def's Ex. H (doc. 147-1). On May 4, 2020, Lompoc expanded inmate COVID-19 testing to include all 1,162 inmates at the FCI. *Id.* By May 11, 2020, BOP reported 912 active and confirmed COVID-19 infections among inmates, nearly 80% of the population. *Id.* By mid-June 2020, the number of reported, active infections among inmates had dropped below 10. *See Facility-Level BOP COVID-19 Trends*, U.S. DEP'T OF JUST. OFF. OF THE INSPECTOR GEN., https://experience.arcgis.com/experience/ab22fb4c564 e4f4b986e257c685190e8/page/page_2/ (last visited Mar. 15, 2021) (OIG interactive dashboard with data relating to COVID-19 within BOP). By the time defendant filed this Motion, BOP reported that there were no active infections among inmates and seven among staff at Lompoc. *Id.* And, by the date of the hearing, BOP reported one active infection among inmates and one among staff. *Id.*

Despite this drop in infections, defendant asserts that the conditions that led to the astronomical infection rates over the summer have not changed. Based on a remote inspection conducted between April 23 and May 1, 2020, the Office of the

Inspector General of the United States Department of Justice identified several deficiencies in BOP's COVID-19 response at Lompoc, including inadequate staffing of health and correctional staff, lack of adequate testing and screening of inmates, inadequate leadership, shortage of personal protective equipment, and limited use of home confinement as an alternative for high-risk people. Off. of the Inspector Gen. Report at ii. An in-person inspection of FCI Lompoc conducted on September 1 and 2, 2020, by Homer Venters MD, MS, a court-appointed expert in *Torres et al. v. Milusnic et al.*, Case No. CV 20-4450-CBM-(PVCx), revealed some changes that strengthened Lompoc's COVID-19 response, like the creation of a dedicated hospital unit to care for COVID-19 patients and a screening database used to track symptoms across time and location. Venters Report at 19–20, Def.'s Ex. G (doc. 147-1). However, Dr. Venters also found deficiencies in screening, timely access to sick call and chronic care, and infection control in housing areas. *Id.* at 21–25. Dr. Venters observed:

> Overall, the COVID-19 response at . . . Lompoc is characterized by some evidence-based strategies being superimposed on a grossly inadequate system of health care. As a result, the policies and procedures developed to find and respond to COVID-19 cases, slow the spread of the virus and protect high risk patients have been incompletely implemented.

*Id.* at 28–29.

Defendant also asserts that the sentencing factors weigh in favor of relief. In imposing a sentence that is "sufficient, but not greater than necessary" under § 3553(a), courts consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, community safety, the kinds

of sentences available, the need to avoid unwanted disparities in sentencing, and all other obligations of sentencing including punishment, deterrence, and rehabilitation.

Defendant contends that the five-plus years he has served are sufficient to hold him accountable for his actions. Defendant emphasizes evidence of his post-sentencing rehabilitation, including his discipline-free record, participation in programing and college classes, and facilitator role in the Alternative to Violence Program, where he mentors other inmates. He also notes that, after being sentenced, he was involved in gathering evidence that another inmate was involved in the death of a 12-year-old boy in Delaware. He relayed information told to him to authorities, which led to the prosecution of that cold case. And he argues that, given his rehabilitation, mentoring efforts, and lack of a criminal history, his release would not present a danger to the community.

However, the nature and circumstances of defendants' crimes are significant. He engaged in a wide-range fraud scheme that not only caused financial loss to his then-employer, but, more importantly, put lives at risk and, ultimately contributed to the loss of 9 lives and forever changed many more. In fact, 11 family members submitted letters to the Court concerning defendant's request for compassionate release. These letters illustrate the great damage caused by defendant's actions. The 151-month sentence imposed, which was on the low-end of the guidelines range calculated by the Court, and well below the 188-month sentence recommended by the Government, reflects the Court's carefully considered balance between defendant's lack of prior offenses and similar factors, and the grave losses caused by these crimes.

On this record, the Court does not find that defendant met his burden to show that he is entitled to the extraordinary remedy of compassionate release. Given lack of active, reported COVID-19 infections at Lompoc when defendant filed his motion at the time of the hearing, his risk of a COVID-19 reinfection (which itself is a rare possibility) is not so great that it outweighs the magnitude of his offense, even after considering evidence of defendant's post-sentencing rehabilitation. At the same time, the Court recognizes that defendant's evidence shows that conditions at Lompoc could result in a spike of new cases at the facility. Accordingly, the Court denies this Motion without prejudice and with leave to renew if circumstances at Lompoc change. The Court will consider any renewed motion on an expedited basis.

## CONCLUSION

For the reasons above, defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 147) is DENIED without prejudice and with leave to renew. The Court notes that defendant filed a Supplement (doc. 156) to this motion yesterday, March 17, 2021, which asserts additional extraordinary and compelling reasons and an alternative request for relief. The Court will treat the Supplement as a renewed motion and will address it in a separate opinion after briefing and oral argument. The Government's response is due by March 26, 2021. The Court will contact the parties to schedule oral argument.

IT IS SO ORDERED and DATED this __18__ day of March 2021.

                                          /s/ Ann Aiken

                                          Ann Aiken
                            United States District Judge