IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

    vs.

STEVEN METHENY,

          Defendant.

_____

Case No. 1:13-cr-00053-AA-1
**OPINION AND ORDER**

AIKEN, District Judge:

Before the Court is defendant Steven Metheny's renewed motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. 165. Defendant filed his initial motion on October 7, 2020. Doc. 147. On March 17, 2021, defendant filed a supplement to that motion. Doc. 156. On March 18, 2021, the Court denied defendant's initial motion and noted that his supplement would be treated as a renewed motion. Doc. 158. On April 5, 2021, the Court held a hearing to consider whether the supplemental information demonstrated changed circumstances

Page 1 – OPINION AND ORDER

warranting compassionate release. Doc. 170. The hearing was continued, however, to allow the government time to obtain additional information regarding defendant's allegations and to convey the Court's requests that defendant receive care from a cardiac specialist and be transferred from FCI Lompoc to FCI Sheridan. Doc. 170. The Court received supplemental information from defendant and the government in April, June, and September 2021 and held status conferences on June 24 and September 21, 2021. Docs. 174, 176, 180, 181, 183, 185. At the September 21 status conference, the Court GRANTED defendant's renewed motion for the following reasons.

## STANDARDS

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that two conditions are met: (1) that "[e]xtraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." If the court finds that those conditions are met, before granting a sentence reduction, it must "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam) ("[A]lthough a district court must perform this sequential inquiry before it *grants* compassionate release, a district court that properly *denies* compassionate release need not evaluate each step." (Emphases in original.)).

The Sentencing Commission's policy statement regarding sentence reductions under § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13. The policy statement identifies

categories of extraordinary and compelling reasons, including the defendant's age, medical conditions, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). It also requires courts to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" *Id.* § 1B1.13(2). But this policy statement, which has not been updated since the First Step Act amended § 3582(c)(1)(A), applies only to motions filed by the BOP Director on behalf of a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). On a defendant's direct motion for compassionate release, the policy statement "may inform a district court's discretion . . . but [it is] not binding." *Id.* As a result, the court may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.*

## DISCUSSION

Defendant is serving a 151-month prison term at Federal Correctional Institution ("FCI") Lompoc and has a projected release date of May 6, 2026. Defendant is 51 years old with a BMI of 30.1 kg/m² and diagnosed hypertension. In March 2019, defendant experienced severe chest pain, elevated blood pressure, and an abnormal echocardiogram, which resulted in a three-day hospitalization. In May 2020, defendant tested positive for COVID-19 and experienced mild symptoms. Defendant received his first dose of the Pfizer vaccine against COVID-19 in late April 2021, but BOP medical records do not indicate that he has received a second dose.

After the hearing on his initial release motion, defendant's health began to deteriorate. In January 2021, he began experiencing severe eye pressure, visions

problems, and migraine headaches.  Defendant saw a nurse practitioner for those issues in February 2021.  At that appointment, his blood pressure was higher than it was when he was hospitalized in March 2019.  Defendant's blood pressure remained high, and by late April 2021, he was diagnosed with hypertension and prescribed lisinopril as a treatment.  Also, in late April 2021, defendant underwent an echocardiogram that indicated he had sinus tachycardia (an abnormal heart rate);defendant continued to complain of chest pain and heart palpitations.  In June 2021, medical services increased defendant's lisinopril dosage and prescribed hydrochlorothiazide to help control his blood pressure.  Defendant was not seen by a cardiologist until July 15, 2021.  The cardiologist diagnosed defendant with tachycardia, chest pain, and hypertension.  The cardiologist also recommended that several follow up tests be conducted to evaluate defendant's symptoms and cardiac functioning and that defendant stop taking lisinopril and be switched to losartan or amlodipine to manage his blood pressure.  Despite several requests, defendant has not had an appointment with medical staff or had his blood pressure checked since his July 15 cardiology consultation.  He also reports that medical services has stopped his lisinopril prescription but not prescribed an alternative blood pressure medication, as the cardiologist recommended.  Defendant also reports that he continues to experience headaches, eye pain and pressure, shortness of breath, fatigue, rashes, and vertigo or dizziness when he sits or stands.

On this record the Court finds that defendant has met the "extraordinary and compelling reasons" criteria.  During the COVID-19 pandemic, many courts have

recognized that when a defendant has a chronic medical condition that may substantially increase the defendant's risk of becoming seriously ill or dying from COVID-19, such a condition may satisfy the standard of extraordinary and compelling reasons.  *See United States v. Hanson*, 470 F. Supp. 3d 1197, at 1201–02 (D. Or. 2020) (collecting cases).  And under the Sentencing Commission's policy statement, circumstances that may present extraordinary and compelling circumstances include "a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environmental of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1(B).  Defendant's age, obesity, and heart conditions (including high blood pressure) place him at risk of severe illness or death from COVID-19.  *People with Certain Medical Conditions*, CDC: COVID-19 (Aug. 20, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 22, 2021).  Regardless of his vaccination status, defendant remains at risk of re-infection, particularly from the Delta variant of the virus.  *Delta Variant: What We Know About the Science*, CDC: COVID-19 (Aug. 26, 2021)   https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Sept. 22, 2021).  Moreover, defendant has experienced both inadequate care and significant delays in evaluations and treatment that have substantially diminished his ability to treat and manage his heart conditions while at FCI Lompoc.

The Court also finds that the applicable factors under § 3553(a) support reducing defendant's sentence to time served and imposing additional terms of

supervised release as outlined below.  Given the significant threat that defendant's incarceration at FCI Lompoc poses to his health, defendant's efforts at rehabilitation, and that the 73 months that defendant has served have "been harsher than the [sentence] originally contemplated at the time of sentencing[,]" *United States v. Olawoye*, 477 F. Supp. 3d. 1159, 1166 (D. Or. 2020), the Court finds that reducing defendant's sentence to time served and imposing a 364-day residence at the Northwest Regional Reentry Center ("NWRRC"), 800 hours of community service, and a term of home confinement through the balance of his supervised release provides for a sentence that is "sufficient but not greater than necessary" to reflect the gravity and seriousness of his offense, promote respect for the law, provide a just punishment, adequately deter criminal conduct, protect the public from future crimes at defendant's hands, and most effectively provide defendant with the training, medical care, and correctional treatment that he needs, 18 U.S.C. § 3553(a).

## CONCLUSION

The Court finds that defendant has established extraordinary and compelling reasons to warrant a reduction of defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  Defendant's renewed motion (doc. 156) is therefore GRANTED, and defendant's sentence of imprisonment is reduced to time served.  Defendant shall be released to his family for transport back to Oregon.  When a bed becomes available, defendant shall reside at the NWRRC for up to 364 days.  After his release from the NWRRC, defendant shall be subject to home confinement.  Defendant shall perform 800 hours of community service work at the direction of his probation officer.

Page 6 – OPINION AND ORDER

Defendant shall appear for regularly scheduled telephonic status hearings, beginning

on November 29, 2021 at 2:00pm.

IT IS SO ORDERED.

Dated this <u>22nd</u> day of September 2021.


<u>        /s/Ann Aiken        </u>

Ann Aiken
United States District Judge